IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Raymond Kasper (M-32971), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 3:18-cv-50231 |
| v. ) | |
| ) | Honorable Iain D. Johnston |
| John Varga, ) | |
| Warden, Dixon Correctional Center, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Raymond Kasper is currently incarcerated at Dixon Correctional Center, serving a sentence of twenty-four years in prison for criminal sexual assault and aggravated criminal sexual abuse against a minor. Kasper has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. For the below reasons, this Court denies the petition for a writ of habeas corpus and declines to issue a certificate of appealability.

**I. BACKGROUND**

The Court presumes that the state court's factual determinations are correct for the purpose of habeas review because Petitioner has not pointed to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The Court thus adopts the state court's recitation of the facts and begins by summarizing the circumstances leading up to Kasper's conviction and sentencing.

**A. Circumstances Leading Up to Petitioner's Conviction in State Court**

Petitioner Raymond Kasper was the live-in boyfriend of Laura Taets from 2003 through 2011. *People v. Kasper*, 2014 IL App. (2d) 121322-U, ¶ 6 (Apr. 22, 2014) (unpublished). Taets's

1

two children also lived in the house during this time: HH and Bradley. *Id.* In 2010 and 2011, Petitioner was out of work due to a 2009 work injury, *id.* at ¶ 83, so he primarily stayed home to help raise the children while Taets worked two jobs. *Id.* at ¶ 40. HH was twelve years old and Bradley was eleven years old at the time. *Id.* In February 2011, Petitioner had an affair and soon moved out of Taets's home, leaving the children unsupervised after school and whenever Taets was at work. *Id.* at ¶ 9. Petitioner moved back in with Taets, HH, and Bradley in May or June 2011. *Id.* at ¶ 77. He resumed his household duties, which included disciplining the children as needed. *Id.* at ¶ 40.

On October 26, 2011, HH made allegations of sexual abuse to Janet Morales Ory, a social worker at her middle school. *Id.* at ¶ 7. She alleged that Petitioner improperly touched her on three separate occasions between June and October 2011. *Id.* at ¶ 8. First, in June or July 2011, after getting mosquito bites outside, she alleged that Petitioner drew her a bath, washed her, and applied lotion to her, including her breasts. *Id.* ("bathtub incident"). Next, in September 2011, HH alleged that, while she was menstruating, Petitioner rubbed between her legs and digitally penetrated her vagina while she was in the shower. *Id.* ("first shower incident"). Finally, in October 2011, she alleged that, again while she was menstruating, Petitioner rubbed between her legs and digitally penetrated her vagina three times while she was in the shower. *Id.* ("second shower incident").

The following day, October 27, 2011, Police Officer Amy Bucco interviewed HH about her allegations at the Child Advocacy Center ("CAC"). *Id.* at ¶ 7. Petitioner was later arrested. *Id.* at ¶ 9. On November 3, 2011, Lori Thompson, a pediatric nurse practitioner who had "performed hundreds of sex assault examinations" interviewed HH and conducted a physical examination of HH. *Id.* at ¶ 49.

Six months later, on May 20, 2012, HH met with Petitioner's defense attorney at his office, accompanied by her mother Taets and Kimberlee Kasper ("Aunt Kim"), who was Petitioner's sister. *Id.* at ¶ 7. Two days later on May 22, 2012, HH wrote a letter recanting her allegations and saying it was all a dream. *Id.* The following day, Officer Bucci and Illinois Department of Children and Family Services ("DCFS") investigator Janet Lennemann interviewed HH at school. While HH later testified that she believed everything in her recantation letter was the truth, *id.* at ¶ 34, Lennemann testified that during the interview on May 23, 2012, HH claimed that only one incident was real. *Id.* at ¶ 7.

### B. Trial, Sentencing, and Post-Conviction Appeals

At trial in July 2012, the prosecution's theory was that Petitioner was obsessed with HH's menstrual cycle and groomed her into submission. *Id.* at ¶ 8. They argued that HH's recantation was only after significant tampering by Aunt Kim and Taets, ultimately convincing HH to write the letter saying it was all a dream and never happened because Taets was still in love with Petitioner. *Id.*

The prosecution introduced nine witnesses during the trial: (1) Janet Ory, the social worker at HH's school to whom she first alleged abuse by Kasper, *id.* at ¶ 11; (2) Officer Amy Bucci, the police officer who interviewed HH at the CAC, *id.* at ¶ 19; (3) HH, who was 12 years old at the time of the incident and 13 years old at the time of trial, *id.* at ¶ 23; (4) Laura Taets, HH's mother and Petitioner's ex-girlfriend, *id.* at ¶ 39; (5) Aunt Kim, Petitioner's sister, *id.* at ¶ 45; (6) Lori Thompson, pediatric nurse practitioner who interviewed and examined HH in November 2011, *id.* at ¶ 49; (7) Officer Michael Seegers, who interviewed and arrested Kasper, *id.* at ¶ 55; (8) Janet Lennemann, the DCFS investigator, *id.* at ¶ 58; and (9) Carol Fetzner, a

Licensed Clinical Professional Counselor who did not interview HH, *id.* at ¶ 62. Thompson and Fetzner provided expert testimony regarding physical and mental effects of abuse, respectively.

On the other side, defense counsel Michael Barrett took a different approach. The defense's theory was that HH was upset because of Petitioner's affair and fabricated the allegations against him out of feelings of anger and betrayal. *Id.* at ¶ 9.

Defense counsel introduced six witnessed during trial: (1) Laura Taets, HH's mother and Petitioner's ex-girlfriend, *id.* at ¶ 65; (2) HH, who made the allegations, *id.* at ¶ 78; (3) Bradley, HH's older brother and Taets's son, *id.* at ¶ 78; (4) Dr. Robert Meyer, a Licensed Clinical Professional Counselor, *id.* at ¶ 82; (5) Raymond Kasper, the Petitioner, *id.* at ¶ 83; and (6) Jessica Starks, Petitioner's former co-worker, *id.* at ¶ 91. Meyer testified as an expert in child abuse accommodation syndrome.

On July 12, 2012, the jury returned verdicts finding Petitioner guilty of three counts of predatory criminal sexual assault of a child and three counts of aggravated criminal sexual abuse. On November 1, 2012, Petitioner was sentenced to an aggregate 24 years' imprisonment.

On direct appeal, Petitioner was represented by counsel and argued three claims: (1) trial counsel was ineffective, (2) trial judge abused his discretion in barring evidence of HH's prior false allegations, and (3) insufficiency of the evidence. The appellate court affirmed the judgement of the trial court. *People v. Kasper*, 2014 IL App. (2d) 121322-U (2014). Petitioner, with the help of the state appellate defender, then filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, which was denied. *People v. Kasper*, 21 N.E.3d 716 (Ill. 2014) (table).

On February 17, 2015, Petitioner filed a *pro se* petition for post-conviction relief, raising several claims, which could be construed as including trial court error, abuse of discretion,

4

prosecutorial misconduct, and ineffective assistance of counsel. Dkt. 20-10, at 2-4. This petition was summarily dismissed as being without merit. Again with the help of the state appellate defender, Petitioner appealed the dismissal of his post-conviction petition, arguing that his petition raised the gist of a constitutional claim when alleging the ineffectiveness of trial counsel. This appeal was denied. *People v. Kasper*, 2017 IL App (2d) 150413-U (Feb. 27, 2017) (unpublished). His petition for rehearing was denied in April 2017. Petitioner then filed a *pro se* PLA with the Illinois Supreme Court, arguing that the appellate court erred and his post-conviction petition had a gist of a constitutional complaint, as well as rearguing ineffective assistance of counsel and prosecutorial misconduct. On September 27, 2017, the Illinois Supreme Court denied this PLA. *People v. Kasper*, 89 N.E.3d 760 (Ill. 2017) (table).

On July 5, 2018, Kasper petitioned this Court for a writ of habeas corpus. Dkt. 1.

## II. LEGAL STANDARD

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407. The Court uses an objective standard

to determine whether a state court's application of Supreme Court precedent is unreasonable. *Id.* at 409; *Winston v. Boatwright*, 649 F.3d 618, 624 (7th Cir. 2011).

"[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion," a federal habeas court has a "straightforward inquiry." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The Illinois Appellate Court's decision was the last reasoned opinion on the merits, and thus this Court will "simply review[ ] the specific reasons given by the state court and defer[ ] to those reasons if they are reasonable." *Id.* A federal habeas court gives "great deference to the state courts' determinations." *Lentz v. Kennedy*, 967 F.3d 675, 688 (7th Cir. 2020). Thus, this Court does not ask whether the state court decision was correct or agreeable; the only question is "whether the [state court] decision was unreasonably wrong under an objective standard." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc). Even if the petitioner presents a persuasive petition for relief, federal habeas relief is granted only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102–03, (2011). "This standard is meant to be difficult to meet and is reserved for the 'rare' case." *Lentz*, 967 F.3d at 689 (quoting *Dassey*, 877 F.3d at 302).

Additionally, the court must construe a petitioner's *pro se* filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)). "A '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Frazier v. Varga*, 843 F.3d 258, 262 (7th Cir. 2016) (quoting *Erickson*, 551 U.S. at 94). Thus, *pro se* petitions for habeas corpus are "entitled to a liberal construction." *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004) (citing *Jackson v.*

*Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997) (finding a cognizable claim when a *pro se* petition includes "enough detail to describe a claim that is within the power of a federal court to address")).

### III. ANALYSIS

Kasper claims in his habeas petition that he was denied due process upon four grounds:

(1) <u>Ineffective Assistance of Trial Counsel</u>
   (a) Trial counsel prejudiced petitioner and rendered ineffective assistance for opening the door to testimony about the order of protection against Petitioner.
   (b) Trial counsel prejudiced petitioner and rendered ineffective assistance for failing to object to the admission of the victim's testimony.
   (c) Trial counsel prejudiced petitioner and rendered ineffective assistance for failing to object to the victim's prior consistent statements as inadmissible hearsay.
   (d) Trial counsel prejudiced petitioner and rendered ineffective assistance for calling Petitioner a "child molester" and comparing him to an "ape" during closing argument.
   (e) Trial counsel prejudiced petitioner and rendered ineffective assistance for failing to object to prosecution's act of vouching for a witness during closing argument.
   (f) Trial counsel prejudiced petitioner and rendered ineffective assistance for attempting to offer irrelevant character evidence for Petitioner.
   (g) Trial counsel prejudiced petitioner and rendered ineffective assistance by violating the Advocate Witness Rule and failing to withdraw as counsel in order to testify regarding his conduct.
   (h) Trial counsel prejudiced petitioner and rendered ineffective assistance for opening the door to evidence regarding the victim's post-outcry counseling.
   (i) Trial counsel prejudiced petitioner and rendered ineffective assistance by failing to subject prosecution to a meaningful adversarial challenge.[1]
      (1) By failing to investigate or call a medical expert;
      (2) By failing to investigate or call Mary McCall;
      (3) By failing to investigate or call Kenneth Taets; and
      (4) By failing to produce Laura Taets's work records.
   (j) Trial counsel prejudiced petitioner and rendered ineffective assistance through cumulative errors and omissions.
(1) <u>Trial Court Error</u>
   (a) The trial court prejudiced Petitioner's defense by excluding evidence of victim's prior allegation (and recantation) of sexual abuse against her brother.
   (b) The trial court prejudiced Petitioner's defense by barring admission of a threatening letter from the victim to Petitioner.

---

[1] The Court splits this claim to address each of the individual claims made within petitioner's claim 1(i).

  (2) <u>Prosecutorial Misconduct</u>
    (a) The prosecution prejudiced Petitioner by using its medical expert's testimony about her conversations with HH, making the expert an "agent for the State."
    (b) The prosecution committed error by engaging in "improper litigation conduct" by introducing the order of protection against Petitioner.
    (c) The prosecution committed error by knowingly presenting false evidence about HH's tampon use and tampon injury in general.
    (d) The prosecution committed error in violation of Petitioner's Sixth Amendment right by arguing that the victim's prior sexual conduct was inadmissible under the Illinois Rape Shield, 725 Ill. Comp. Stat. 5/115-7.
  (3) <u>Insufficiency of the Evidence</u>
    (a) The Appellate Court erred in basing its decision off of alleged hearsay, impeached testimony, and a false and inaccurate medical exam.

Dkt. 1, pp. 5-8. Respondent argues that all but four claims are procedurally defaulted because they were not fairly presented through a complete round of state review. Respondent further argues that the remaining four claims—three for ineffective assistance of trial counsel and one for insufficiency of the evidence—are barred from re-litigation because the Illinois Appellate Court reasonably applied federal law. Dkt. 19, at 16-25.

  As a threshold matter, the Court must first determine whether Petitioner's federal claims are indeed procedurally defaulted.

  **A. Procedural Default**

  A habeas petitioner in state custody must have "exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(A). In Illinois, the Illinois Post Conviction Hearing Act provides the procedural, statutory remedy to collaterally attack a sentence and conviction. *See* 725 Ill. Comp. Stat. 5/122-1 *et. seq.*; *People v. Brisbon*, 647 N.E.2d 935, 937 (Ill. 1995). In Illinois, the post-conviction review is "limited to constitutional matters that neither have been, nor could not have been, previously adjudicated." *People v. Hudson*, 745 N.E.2d 1246, 1250 (Ill. 2001). "Any issues which could have been raised on direct appeal, but were not, are procedurally

defaulted, and any issues which have previously been decided by a reviewing court are barred by the doctrine of *res judicata*." *Id.*

Thus, a federal habeas petitioner "must fairly present to each appropriate state court his constitutional claims before seeking relief in federal court." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). Even if claims have been procedurally defaulted, courts must review these claims in collateral proceedings "when a defendant shows cognizable cause for his failure to make timely objection, and shows actual prejudice flowing from the error now complained of." *Id.* "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of law." *Martinex v. Ryan*, 566 U.S. 1, 10 (2012); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008).

If constitutional claims are not presented through a full round of state court review, they are procedurally defaulted on this Court's habeas review. Of Petitioner's twenty individual claims in this petition, only four have been exhausted in state court. Petitioner does not show any cause for his failure to make timely objection, nor actual prejudice as a result, and thus does not make any argument against default.

### 1. Claims of ineffective assistance of trial counsel

A petitioner must fairly present his claims through one complete round of state court review, either on direct appeal or in post-conviction proceedings to avoid procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this means appeals up to and including the filing of a PLA to the Illinois

Supreme Court. *O'Sullivan*, 526 U.S. at 845-46; *Duncan v. Hathaway*, 740 F. Supp. 2d 940, 945 (N.D. Ill. 2010).

Petitioner's claim of ineffective assistance of counsel is specifically regarding his trial counsel, Mr. Barrett. On direct appeal, his first PLA, and his post-conviction appeal, Petitioner was represented by counsel, either retained or appointed. His second PLA was filed *pro se*, as was this habeas petition. The Illinois Appellate Court denied Petitioner's ineffective assistance of counsel claims as being trial strategy, waived, and not improper. *See People v. Kasper*, 2014 IL App. (2d) 121322-U, ¶¶ 97-167 (Apr. 22, 2014) (unpublished).

Here, Petitioner alleges that trial counsel was ineffective because his performance at trial prejudiced him. Specifically, Petitioner alleges that counsel failed to object to keep testimony and evidence from the jury, opened the door to evidence that should not have been made available to the jury, failed to investigate or call several leads, made statements in closing argument that were inaccurate, and failed to withdraw as counsel when he participated in a key conversation. Claims a, b, c, d, e, f, h, i(1), (i)(2), and j are procedurally defaulted. None of these claims were presented at every stage in state court, which is required under 28 U.S.C. § 2254 (b)(1)(A). Additionally, Petitioner has not argued that default should be excused under the circumstances. *See* 28 U.S.C. § 2254 (b)(1)(B). Therefore, claims a, b, c, d, e, f, h, i(1), (i)(2), and m are denied on the merits.

### 2. Claims of trial court error

Here, Petitioner argues that the trial court prejudiced his defense by excluding evidence, specifically testimony about HH's prior allegation (and subsequent recantation) of sexual abuse against her brother and a "threatening" letter written by HH to Petitioner. Regarding the allegations of abuse by her brother, the prosecution filed a motion *in limine* to bar any evidence

of sexual conduct between HH and Bradley. At the hearing, defense counsel argued that he wanted to use this information to show that HH has made false allegations in the past when she is angry at someone. The trial court granted the prosecution's motion and barred this evidence under the Illinois Rape Shield, 725 Ill. Comp. Stat. 5/115-7 (West 2012).

The letter in question was given to Petitioner by HH around the time when HH made the accusations against her brother Bradley, which was approximately three months before she spoke with Ory at school. Petitioner argues that the letter implied HH would "do whatever she felt necessary to get [Petitioner] out of the house." Dkt. 1, at 39. Petitioner does not state whether the trial court excluded this evidence and on what grounds, or whether this was even given to defense counsel at the time of trial.

Petitioner argues that the jury was not able to use the above information to assess HH's credibility, and thus the trial court erred in excluding this evidence. These claims were not exhausted in state court, and thus they are deemed defaulted. Even if they were not defaulted, this Court gives great deference to the determinations of the state courts and finds that the Illinois Appellate Court reasonably applied the Illinois Rape Shield, 725 Ill. Comp. Stat. 5/115-7. *People v. Kasper*, 2014 IL App. (2d) 121322-U, ¶¶ 170-78.

### 3. Prosecutorial Misconduct

Petitioner's next claims concern prosecutorial misconduct, specifically in its use of an expert witness, introducing an order of protection Taets held against the Petitioner, presenting allegedly false evidence about HH's tampon use, and arguing that HH's prior sexual conduct was inadmissible under the Illinois Rape Shield. None of these claims were raised on direct appeal, and the Illinois Appellate Court did not address these issues on the merits. Thus, they have not been exhausted in state court and are procedurally defaulted.

11

### B. Claims Exhausted in State Court

The parties agree that the following claims were exhausted and not procedurally defaulted. Dkt. 19, at 16; Dkt. 25, at 2.

### 1. Ineffective assistance of trial counsel

Claims of ineffective assistance of trial counsel add another layer of deference to this Court's review beyond the deference owed with habeas. A petitioner must show "that counsel's performance was deficient," in that it was "objectively unreasonable under the circumstances," and the petitioner must also show that counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). An inquiry like this into counsel's performance and trial outcome depends "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). *Strickland* mandates that this Court adopt "a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689). This performance prong is designed to be deferential, because, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Id.* Under the second prong, *Strickland* requires that the petitioner "show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Combining the performance and prejudice prongs requires that federal habeas courts give considerable deference to the state court decision. Even when a state decision is "at odds with 'the federal court's conception of how *Strickland* ought to be applied in that particular case,'" a federal habeas court must give deference to the state court's determinations. *Laux v. Zatecky*, 890

12

F.3d 666, 674 (7th Cir. 2018) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)). Thus, the question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Here, Petitioner has three individual claims of ineffectiveness of trial counsel. First, in claim g, which was exhausted through state court, Petitioner argues that he was prejudiced when trial counsel violated the Advocate Witness Rule and failed to withdraw as counsel to testify regarding his conduct. This alleged violation concerns the meeting between HH and defense counsel at defense counsel's office, days before HH wrote her recantation. "The advocate-witness rule precludes an attorney from acting as advocate and witness in the same case." *People v. Kasper*, 2014 IL App. (2d) 121322-U, ¶ 143; *see* Ill. R. Prof. Conduct R. 3.7(a)(3) (eff. Jan. 1, 2010) ("a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless" there are certain criteria met). The Illinois Appellate Court noted that defense counsel was not a "necessary" witness to the meeting because HH, Aunt Kim, and Taets were all present—and testified about the meeting. Thus, the court argued, because defense counsel was not the sole witness, he was not necessary and was not deficient for failing to withdraw. We agree.

Next, in claim i(3), Petitioner argues that defense counsel was ineffective for failing to investigate or call, Kenneth Taets who was present in Taets's home during the time of the alleged second shower incident and whose testimony could cast doubt on other witnesses' credibility. Petitioner asserted that his defense counsel was aware of this information, going so far as to attempt to elicit it from Bradley during questioning; however, the court sustained the prosecution's objection on relevance and was not persuaded by defense counsel's offer of proof. *People v. Kasper*, 2017 IL App (2d) 150413-U, ¶ 19 (Feb. 27, 2017) (unpublished). The

13

appellate court concluded that Kasper failed to show counsel satisfied either prong of *Strickland* because Kenneth Taets's testimony would have been cumulative and it could not have prejudiced petitioner because he was only present in the home during part of the timeframe for one of the three incidents. *Id.* at ¶ 23-25. *Strickland*'s highly deferential standard requires that Petitioner show that this conduct was both objectively unreasonable under the circumstances and that but for this conduct, the result would have been different. This is an extremely high burden to overcome. Although the Illinois Appellate Court did not address this issue on the merits, it falls squarely within trial strategy. In *Strickland*, the Supreme Court said

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland v. Washington*, 466 U.S. 668, 689 (1984) (internal quotations omitted). Here, there is a strong presumption that counsel's decision to not call an additional, cumulative witness constituted reasonable professional assistance. Thus, this claim is denied.

In claim i(4), Petitioner argues that defense counsel was ineffective for failing to produce Laura Taets's work records, which would show she took time off work and was home more often during the timeframe when the alleged second shower incident took place. Petitioner disputes that he was home alone with HH and Bradley on the evening of the second shower incident, and hoped that Taets's work records would cast doubt on HH's recollection of that incident. Like the previous claim, this fails to meet *Strickland*'s high standard. The appellate court similarly concluded that Taets's work records, if admissible, would have been cumulative as they served only to bolster the fact that Kenneth Taets was in the home during certain dates in October 2011 and could not possibly have prejudiced Kasper. *People v. Kasper*, 2017 IL App (2d) 150413-U, ¶

14

26 (Feb. 27, 2017) (unpublished). When evaluating counsel's effectiveness, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. There is a strong presumption that counsel's conduct at trial was effective, as the Illinois Appellate Court found, and Petitioner has not laid out any supporting arguments to show otherwise. Thus, Petitioner's claim of ineffective assistance of trial counsel is denied.

### 2. Insufficient evidence

Here, Petitioner argues that the Illinois Appellate Court erred in basing its decision off of alleged hearsay, impeached testimony, and an allegedly false and inaccurate medical exam. He exhausted this claim in state court. Respondent argues that Petitioner is seeking to relitigate these claims. Dkt. 19, at 18.

On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). A petitioner whose habeas challenge to a state criminal conviction is not procedurally defaulted "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Under *Jackson*, juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319); *see Galloway v. United States*, 319 U.S. 372, 395 (1943) ("[T]he essential requirement [for a challenge to the sufficiency of the evidence] is that mere speculation be not

15

allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.").

Petitioner claims that the testimonies of Ory, Lennemann, and Thompson presented incomplete and inconsistent information by which no jury could have found proof of guilt beyond a reasonable doubt. Dkt. 1, at 50-52. However, the jury considered the testimonies of numerous other witnesses, including viewing the actual CAC interview in full, when making its decision. In affording deference to the trier of fact and taking into account the jury's broad discretion in considering the evidence, the Illinois Appellate Court found sufficient evidence to find Kasper guilty beyond a reasonable doubt. *People v. Kasper*, 2014 IL App. (2d) 121322-U, ¶ 186 (Apr. 22, 2014). Based on a thorough review of the state court records, the Illinois Appellate Court's decision was neither contrary to nor an unreasonable application of United States Supreme Court precedent. Thus, Petitioner's claim of insufficient evidence is denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). A certificate of appealability is a threshold issue, and a determination of whether one should issue neither requires nor permits full

consideration of the factual and legal merits of the claims. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

For the reasons stated above, the Court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find this Court's rulings debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack*, 529 U.S. at 484-85). Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated herein, Petitioner Raymond Kasper's petition for writ of habeas corpus is denied.

Date:  February 19, 2021          By: _____
                                      IAIN D. JOHNSTON
                                      United States District Judge

17